Wm. White, plaintiff in error, *vs.* John R. Hart *et al.*, defendant in error.

The Courts of Georgia, organized under the Constitution of 1868, have no jurisdiction or authority to try, or give judgment on, or enforce any debt, the consideration of which was a slave or slaves, or the hire thereof. Warner, J., dissenting.

Jurisdiction. Slave note. Before Judge Parrott. Chattooga Superior Court. March Term, 1869.

Hart and W. D. Davis, his security, in 1859, gave to White, their promissory note, due the 1st of March, 1860, and White sued them on the same. At March Term, 1869, the defendants plead that the consideration of said note was a slave, and insisted that, for that reason, the Court could not try the cause. Plaintiff's counsel objected to said plea, upon the ground that, being dilatory, it came too late. This objection was overruled. They then demurred to the plea. The Court overruled the demurrer, and, it not being denied that said note was given for a slave, dismissed the cause for want of jurisdiction. Plaintiff's counsel say that the Court erred in allowing said plea filed at said term, in overruling said demurrer, and in dismissing said cause.

E. N. Broyles, A. R. Wright, F. A. Kirby, for plaintiff in error, as to the time of filing said plea, cited Irwin's Code, sections 3412, 3404, 3406 ; 27 Ga. R., 172 20th ; 382, 28th, 546–7, 26th, 170 ; as to jurisdiction, Par. 1, Section 10, Art. 1, Constitution U. S.; 37 Ga. R., 513, 532 ; How. R., 311, 315 to 318 ; 6th, 301, 12th, 1, 15th, 304, 18th, 370 ; 2 Wal. R., 23, 4th, 535 ; 41 Miss. R., 119 (3), 130, 131 ; Sedg Stat. and Const. L., 643, 653, 658–9, 663 ; 37 Ga. R., 127–9, 193, 137, 139 to 155 ; Menge *vs.* Gilmore, 1 Car. L. Repos., 34 ; Nevada St. R., 327 ; 8th Wheat. R., 76, 12th, 347, 350 ; 28th Ga. R., 351 ; 4th Wheat. R., 197, 8th 17, 75, 76 ; 15 Howard, 306, 310, 311, 319 ; 3d, 707, 717 ; 4th Wal. R., 550 ; 7th Cranch R., 43 ; 2 Story on Const., section 1381.

T. W. Alexander, Harvey and Scott, for defendant.

White *vs.* Hart *et al.*

BROWN, C. J.

We are of opinion that the Court did not err under our very liberal, and I may say, rather loose system of pleading, and under the new Constitution of this State, in permitting the defendants in the Court below to file their plea to the jurisdiction at the time it was offered.

Upon the main point in this case we affirm the judgment of the Court below for the reasons given in the case of *Alfred Shorter, vs. J. L. Cobb et al., ante.*

McCAY, J., concurred in this judgment, but furnished no opinion.

WARNER, J., dissenting.

At the time the contract was made and consummated between the contracting parties in this case, to-wit: on the 9th day of February, 1859, slaves were held, under the then existing laws of this State, as property, and were recognized as such, not only by the then existing laws of this State, but were so recognized by the Constitution of the United States, and constituted a *legal and valid consideration* for that contract. The existing laws of the State, at the time the contract was made, imposed a *legal obligation* upon the makers of the note, to perform their contract, in accordance with its terms and stipulations. The tenth section of the first article of the Constitution of the United States declares, that: "No State shall pass *any law* impairing the obligation of contracts." The seventh paragraph of the seventeenth section of the fifth article of the Constitution of Georgia, of 1868, declares: "That no Court or officer, shall have, nor shall the General Assembly give jurisdiction, or authority, to try or give judgment on, or enforce any debt, the consideration of which was a slave or slaves, or the hire thereof." The Constitution of this State is the fundamental law thereof; still it is a *law of the State;* and when it impairs, or destroys the obligation of *prior* contracts, *valid* by the existing laws of the land, *anterior* to its adoption, it is as clearly *within* the

prohibition of the Constitution of the United States, as any *other law of the State.* If no State can pass any law *impairing* the obligation of contracts, no State can pass any law *destroying* the obligation of contracts. This clause of the Constitution of 1868, not only impairs, but *destroys* the obligation of the contract, as the same existed under the laws of the State at the time the contract was made, by denying *all remedy* to one of the contracting parties, for the enforcement of that obligation under the laws which existed, and created that obligation, *at the time the contract was made,* and to that extent, is a *palpable* violation of the Constitution of the United States, which is the *paramount law of the land;* and is, therefore null and void. To escape from this conclusion, and to take this case out of the Constitutional prohibition, the majority of the Court *assume* that Georgia was not a State *in* the Union at the time of the adoption of the Constitution of 1868, that the adoption and ratification of that Constitution was not the action of the people of the State, but of Congress, and, therefore, the tenth section of the first article of the Constitution of the United States has no application. This *assumed* position of the majority of the Court, was examined and discussed in my dissenting opinion in the case of *Hardeman vs. Downer,* (*ante*), decided at the present term of the Court, and will not be again repeated here. It would have been much more satisfactory, however, if the majority of the Court, even upon their own theory, had shown when and where Congress derived the power to *repudiate* and *confiscate private contracts.* The truth is, that prior to the emancipation of slaves, at the time when this contract was made, in 1859, it was a legal and valid contract under *the then existing laws of the land,* as much so as any other contract whatever. The plaintiff had a *legal vested right* in that contract, of which, neither Congress nor the State, could deprive him, without violating the fundamental principles of the social compact, and the fundamental principles of the law, as the same has existed in England, and in this country, from the time of *Magna Charta* down to the present time. 2nd Bl. Com., 436; Revised Code, sections 2

and 6. The emancipation of slaves by war, is one thing, the repudiation and confiscation of *private* contracts between individuals, is another and very different question. The loss of slave property by emancipation, should fall upon him who was the owner of that property at the time emancipation took place. Contracts made between *individuals* for which slave property was the consideration, *prior* to the time of emancipation, were as legal and valid as any other contracts, and as much under the protection of the Constitution of the United States, as any other class of contracts, and were recognized and enforced in every State of the Union. In Commonwealth vs. Ames, 18th Pickering's Reports, 215, Chief Justice Shaw, said: "If a note of hand, made in New Orleans, were sued on here, and the defence should be that it was a bad consideration, because given for the price of a slave sold, it may be well admitted that such a defence could not prevail, because the contract was a *legal one by the law of the place where it was made.*" There are many cases in this State, where A purchased a slave from B, and gave to the latter his note for the price thereof, and afterwards sold the slave purchased of B, at an advanced price to C, and received payment in money, therefor, and now, when B sues A on his note, A, with the money in his pocket, received for the sale of the slave purchased of B on a credit, pleads the Constitution of 1868 in bar of B's legal right to maintain any suit against him on his note. Ought such *flagrant injustice,* under the form and color of law, be tolerated, much less sanctioned by the Courts in any *civilized* country. No professional inquirer in search of legal truth, and an honest interpretation of the fundamental principles of the laws of his country, shall ever in the future, read the record of this case, and say that it received my sanction as a judicial officer.

The seventh paragraph of the seventeenth section of the Constitution of 1868, being *void,* it does not defeat or take away the jurisdiction of the Superior Court, to enforce the plaintiff's contract as expressly conferred by the third section of the fifth article of that Constitution. In accordance with

the views heretofore expressed, I am of the opinion the judgment of the Court below should be reversed. For the reasons given in this case, I dissent from the judgment of the Court in the case of *Shorter vs Cobb, ante,* involving the same question, and am of the opinion that the judgment of the Court below should be reversed in that case.